## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| GEOFF LONG, JEREMY MELETTI, TUAN THIES, WILLIAM "BILL" BYRD, JOSHUA YOON, AND BRETT GEORGULIS, each individually and on behalf of a putative class of similarly situated individuals, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 4:25-cv-01332 ) |
| | ) **CLASS ACTION** |
| ACUSHNET COMPANY, a Delaware Corporation, | ) ) **JURY TRIAL DEMANDED** |
| Defendant. | **)** ) ) |
| **Serve: Acushnet Company** **c/o Gerald L. Maatman, Jr., Esq.** **Duane Morris LLP** **190 South LaSalle Street, Ste 3700** **Chicago, IL 60603-3433** | ) ) ) ) ) |

### *CLASS ACTION COMPLAINT*

The plaintiffs Geoff Long ("Long"), Jeremey Meletti ("Meletti"), Tuan Thies ("Thies"), William "Bill" Byrd ("Byrd"), Joshua Yoon ("Yoon"), and Brett Georgulis ("Georgulis") (collectively, "Plaintiffs"), each on behalf of himself and all others similarly situated (collectively, the "Class Members"), file this Class Action Complaint against Acushnet Company (interchangeably "Acushnet" or "Defendant").

### *NATURE OF THE ACTION*

1.     This consumer protection class action concerns unfair and/or deceptive acts and misrepresentations. Acushnet made, labeled, and sold boxes of golf balls (and sleeves contained therein) that were represented as containing twelve Titleist –Pro V1x (Left Dash) golf balls  with "Enhanced Alignment" ("Left Dash EA"), but

the boxes that Plaintiffs received (each a "Mixed Box") contained only nine Left Dash EA golf balls and three unwanted Titleist 2023 Pro V1x golf balls with "Enhanced Alignment" ("Pro V1x EA"). The ProV1x EA golf balls have substantially different performance characteristics than the Left Dash EA golf balls.

2.    Between May 2024, when Defendant launched the Left Dash EA golf ball, and the end of that year, each of Plaintiffs attempted to purchase at least one box of twelve Left Dash EA golf balls through one of two major golf retailers, Golf Galaxy and PGA TOUR Superstore, which sell golf balls nationwide.  However, every Left Dash EA box that Plaintiffs purchased from Golf Galaxy or PGA TOUR Superstore was a Mixed Box, containing nine Left Dash EA golf balls and three unwanted Pro V1x EA golf balls.

3.    Thus, Defendant deceived Plaintiffs and Class Members into buying a Mixed Box containing nine of the desired Left Dash EA rather than the advertised twelve. Plaintiffs would not have purchased the Mixed Box had they known only nine of the twelve balls inside were Left Dash EA.

4.    On information and belief, Defendant knew about its false marketing, advertising, packaging, distribution, and/or sale of its Mixed Boxes. It created Mixed Boxes to sell lower in-demand Pro V1x EA balls masquerading in the place of higher in-demand Left Dash EA balls. This reduced Defendant's inventory of soon-to-be outdated and decreasingly popular 2023 Pro V1x EA golf balls before the release of the new 2025 Pro V1x iteration. It also stretched its inventory of

exceedingly popular Left Dash EA golf balls as the boxes need only contain nine such golf balls rather than the advertised twelve.

### PARTIES, JURISDICTION, AND VENUE

5.      Long is (and at all relevant times was) a citizen of St. Louis City, Missouri.

6.       Meletti is (and at all relevant times was) a citizen of St. Charles County, Missouri.

7.      Thies is (and at all relevant times was) a citizen of Madison County, Illinois.

8.      Byrd is (and at all relevant times was) a citizen of Henrico County, Virginia.

9.      Yoon is (and at all relevant times was) a citizen of Orange County, California.

10.      Georgulis is (and at all relevant times was) a citizen of Harris County, Texas.

11.      Defendant is (and at all relevant times was) a Delaware corporation with its headquarters and principal place of business in Fairhaven, Massachusetts.

12.      This Court has personal jurisdiction over Defendant because Plaintiffs' claims arise out of and relate to Defendant's extensive contacts with Missouri. Defendant's Mixed Boxes were purchased within Missouri and/or by Missouri citizens, including the plaintiffs Long and Meletti, and Defendant has unquestionably purposefully availed itself of the privilege of conducting business activities within Missouri and the benefits and protection of Missouri's laws,

including the enforcement of contracts, the defense of property, and the resulting formation of effective markets.

13.     Defendant has (at all relevant times) continually and deliberately sought to serve and exploit the market for golf equipment in Missouri, and actively, regularly, continually, and deliberately conducted substantial business in Missouri.

14.     By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Defendant urges Missourians to buy its golf balls, including (at all relevant times) Left Dash EA golf balls.

15.     Additionally, Defendant visibly sponsors tournaments at Missouri golf courses and individual players competing at Missouri golf courses.

16.     All named Plaintiffs have received and been influenced by Defendant's advertising and marketing efforts made within and/or emanating from Missouri.

17.     Defendant has employees and contractors residing within or visiting from without Missouri (including sales representatives) who make frequent and regular visits to Missouri golf courses and retail stores to push Defendant's golf products (including golf balls).

18.     Defendant provides Missouri golf courses and other Missouri retailers with promotional materials including posters, giveaways, and display cases.

19.     Defendant's employees and contractors provide professional equipment fitting evaluations to golfers in Missouri, including advising those golfers with respect to what type or model of golf ball best fits their swing profile.

20.     Defendant has (at all relevant times), distributed and sold large quantities of its products (including gold balls) directly to Missouri citizens and to retailers and distributors who are located within and/or made sales and distributions into Missouri. Defendant knew and intended that these retailers and distributors would sell to Missouri citizens, either via online shop or brick-and-mortar store, and, in fact, the nationwide distribution is precisely why Defendant chose the aforementioned nationwide retailers.

21.     Additionally, a simple search of Missouri's Case.Net reveals at least twenty-nine lawsuits filed by or on behalf of Defendant in Missouri's Circuit Courts as the plaintiff seeking to enforce contracts, collect judgments, and otherwise enforce Defendant's property rights.

22.     This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and cost, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiffs, and other Class Members, are citizens of states different from Defendant.

23.     Venue is proper, pursuant to 28 U.S.C. § 1391, because Defendant is subject to this Court's personal jurisdiction with respect to this civil action in question, Defendant is deemed a citizen of this District, and/or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS
*Background*

24.     Defendant is a large manufacturer specializing in golf equipment and accessories, including golf balls. Defendant designs, manufactures, packages, sells, and/or distributes its Left Dash EA golf balls and Mixed Boxes within and from

Massachusetts to consumers (directly and indirectly) within Missouri, throughout the United States, and all over the world.

25.     In 2024, Defendant's net sales approximated $2.5 billion of which approximately $750 million was from golf balls. Defendant is by far the golf ball market's leading producer. Defendant's most premium and widely available golf balls include the Left Dash EA and the Pro V1x EA. Defendant primarily sells its golf balls in boxes containing four sleeves which in turn contain three golf balls each, for a total of twelve golf balls. Each box should contain only one model of golf ball. The box and the sleeve plainly indicate which model of golf ball should be inside. Additionally, the balls inside each sleeve are all similarly numbered, *i.e.* the balls in each sleeve are all numbered 1, 2, 3, or 4. Notably, in all the Mixed Boxes observed, the three balls numbered 4 are the Pro V1x golf balls rather than the expected Left Dash EA. See, for example, the images of a Mixed Box and its contents below with the golf balls intentionally aligned so as to identify which are Left Dash EA and which are Pro V1x. (Again, however, absent this careful alignment *and* opening the box, which a reasonable customer would have no reason to do and would be unable to do in an online purchase, the consumer would have no way of knowing it was a Mixed Box).

Image A:



Image B:



26.    A key component of Defendant's success is the Titleist brand and its perceived level of quality. Defendant spends substantial time, money, and effort to market the quality of its Titleist products, including marketing its high level of quality control in all phases of design, manufacture, and distribution. The Pro V1x EA and presumably the Left Dash EA, both being dual core golf balls, will pass over 140 quality control checkpoints. Rather famously, Defendant will even inspect every Pro V1x EA and Left Dash EA via an x-ray before distribution.

27.    Defendant's customers have very specific and varied demands for Titleist golf balls. Defendant responds to these demands by spending substantial time and money to design and manufacture its golf balls, often discarding hundreds of prototypes before choosing a version or model to produce. Defendant's premium golf balls, like the Pro V1x EA and Left Dash EA, are among the most expensive golf balls available, costing consumers over $4.50 each.

28.    As expected, each model is highly differentiated and not interchangeable.[1] The Left Dash EA is the lowest spinning golf ball among Defendant's premium offerings, while the Pro V1x EA is on the other end of the spectrum as Defendant's highest spinning premium ball. See Image C below.

---

[1] Moreover, most competitive tournaments employ the "One Ball Rule," – USGA Model Local Rule 8G-4 – requiring a player to hit only a single model of ball "[t]o prevent a player from using balls with different playing characteristics depending on the nature of the hole or shot to be played during a round."  Accordingly, the One Ball Rule prevents a player from starting with a Left Dash EA and switching to a Pro V1x EA, and even prevents switching between a 2023 Pro V1x EA and a 2025 Pro V1x EA. Under the One Ball Rule, players who fill their bag with a Mixed Box may incur significant penalties, including two penalty strokes per shot used with the new ball type and up to disqualification if they fail to finish the round with the same type of ball that they used to start the round.

Image C:



29.    Consequently, a golfer who buys the lower spinning Left Dash EA would not have wanted the higher spinning Pro V1x EA because the Pro V1x EA would reliably generate too much spin for that player, costing distance and accuracy. As Defendant's own press release stated upon the unveiling of the balls: "Each golfer's game is different, and selecting the [golf ball] model that meets your unique flight, spin, and feel requirements is key to playing your best."

30.    Recent advances in golf related technologies and data, such as the advent and adoption of launch monitors, have revealed that many players are commonly losing distance and accuracy by generating too much spin.

31.    Thus, consumer demand for lower spinning golf balls, like the Left Dash EA, has increased, and consumer demand for higher spinning golf balls, like the Pro V1x EA, has decreased.

*Scienter*

32.    Defendant was economically incentivized to sell Mixed Boxes, because as of 2024, consumer demand for higher spinning golf balls, like the Pro V1x EA, had decreased relative to lower spinning golf balls like the Left Dash EA. Thus, Defendant profited from selling the Mixed Boxes by stretching its inventory of in-demand Left Dash EA while contemporaneously purging its inventory of less in-demand and soon-to-be outdated 2023 Pro V1x EA golf balls.

33.    But even if unplanned, Defendant's discovery of Mixed Boxes would have been unavoidable during its regular—and highly controlled—manufacturing, packaging, and distribution processes. An excess of Left Dash EA golf balls numbered 4 in inventory, or the deficit of Pro V1x EA golf balls numbered 4 in inventory were unavoidable tell-tale signs of the sale of Mixed Boxes. Not to mention the possibility, better yet probability, that other consumers notified Defendant of this problem. Furthermore, the fact that only sleeves of the number 4 balls contained Pro V1x EA rather than Left Dash EA demonstrates that the inclusion of those sleeves in the Mixed Boxes was intentional or known and not merely due to inadvertence or surprise.

34.    But rather than remedying the problem, Defendant chose to do nothing. Defendant never issued a recall or warning and continued to advertise its

high level of quality control and reliability while contemporaneously profiting from the sale of Mixed Boxes to the consumer's detriment.

*ALLEGATIONS RELATED TO EACH NAMED PLAINTIFF*

35.     *Plaintiff Long.* In November 2024, Long wanted to buy a box of twelve Left Dash EA golf balls, so he ordered and paid for them online from Golf Galaxy. However, when he received his order, he received a Mixed Box containing only nine Left Dash EA balls. He paid for twelve and received nine. He ordered and received the golf balls while at his residence in St. Louis City, Missouri.

36.     Golf Galaxy is headquartered in Pennsylvania, and the Pennsylvania merchant administers its webstore from its offices in Pennsylvania. Reasonably relying on Defendant's representations, made within and/or emanating from Massachusetts, Golf Galaxy republished the same and offered for sale boxes purportedly containing twelve Left Dash EA golf balls through its Pennsylvania webstore.

37.     Golf Galaxy fulfilled Long's order by shipping Long a Mixed Box from one of its retail stores, which in this case happened to be located in Illinois. A courier received the Mixed Box in Illinois and delivered it to Long's Missouri residence.

38.     On information and belief, neither Golf Galaxy nor any other party altered the Mixed Box that Long received after it left Defendant's custody or control. Golf Galaxy, its Illinois retail store, and Long all reasonably relied on Defendant's representations concerning the contents of the Mixed Box delivered to Long.

39.  *Plaintiff Meletti.* In November 2024, Meletti twice wanted to buy a box of twelve Left Dash EA golf balls, so he ordered and paid for them online from Golf Galaxy. However, when he received his orders, he received Mixed Boxes containing only nine Left Dash EA balls. On both occasions, he paid for twelve and received nine. He ordered and received the balls while at his residence in St. Charles County, Missouri.

40.  Golf Galaxy fulfilled Meletti's first order by shipping Meletti a Mixed Box from one of its retail stores, which in this case happened to be located in Indiana. A courier received the Mixed Box from the retail store in Indiana, transferred the box to one of its facilities in Illinois, and then finally delivered the box to Meletti's Missouri residence.

41.  On the second occasion, Golf Galaxy fulfilled Meletti's order by shipping Meletti a Mixed Box from one of its retail stores, which in this case happened to be located in Illinois. A courier received the Mixed Box in Illinois and delivered it to Meletti's Missouri residence.

42.  On information and belief, neither Golf Galaxy nor any other party altered the Mixed Boxes that Meletti received after they had left Defendant's custody or control. Golf Galaxy, its Indiana and Illinois retail stores, and Meletti all reasonably relied on Defendant's representations concerning the contents of the Mixed Boxes delivered to Meletti.

43.  *Plaintiff Thies.* In November 2024, Thies wanted to buy a box of twelve Left Dash EA golf balls, so he ordered and paid for it online from Golf Galaxy.

However, when he received his order, he received a Mixed Box containing only nine Left Dash EA balls. He paid for twelve and received nine. He ordered and received the balls while at his residence in Madison County, Illinois.

44.    Golf Galaxy fulfilled Thies' order by shipping Thies a Mixed Box from one of its retail stores, which in this case happened to be located in Illinois. A courier received the Mixed Box in Illinois, transferred it to one of its facilities in Missouri, and then finally delivered the Mixed Box to Thies' Illinois residence.

45.    On information and belief, neither Golf Galaxy nor any other party altered the Mixed Box that Thies received after it left Defendant's custody or control. Golf Galaxy, its Illinois retail store, and Thies all reasonably relied on Defendant's representations concerning the contents of the Mixed Box delivered to Thies.

46.    *Plaintiff Byrd.* In October 2024, Byrd wanted to buy a box of twelve Left Dash EA golf balls, so he ordered and paid for it online from PGA TOUR Superstore. However, when he received his order, he received a Mixed Box containing only nine Left Dash EA balls. He paid for twelve and received nine. He ordered and received the balls while at his residence in Henrico County, Virginia.

47.    PGA TOUR Superstore is headquartered in Georgia, and the Georgia merchant administers its webstore from its offices in Georgia. Reasonably relying on Defendant's representations, made within and/or emanating from Massachusetts, PGA TOUR Superstore republished the same and offered for sale

boxes purportedly containing twelve Left Dash EA golf balls through its Georgia webstore.

48.    PGA TOUR Superstore fulfilled Byrd's order by shipping Byrd a Mixed Box from one of its retail stores, which in this case happened to be located in North Carolina. A courier received the Mixed Box in North Carolina and delivered it to Byrd's Virginia residence.

49.    On information and belief, neither PGA TOUR Superstore nor any other party altered the Mixed Box that Byrd received after it left Defendant's custody or control. PGA TOUR Superstore, its North Carolina retail store, and Byrd all reasonably relied on Defendant's representations concerning the contents of the Mixed Box delivered to Byrd.

50.    *Plaintiff Yoon.* In November 2024, Yoon wanted to buy a box of twelve Left Dash EA golf balls, so he ordered and paid for it online from PGA TOUR Superstore. However, when he received his order, he received a Mixed Box containing only nine Left Dash EA balls. He paid for twelve and received nine. He ordered and received the balls while at his residence in Orange County, California.

51.    PGA TOUR Superstore fulfilled Yoon's order by shipping Yoon a Mixed Box from one of its retail stores, which in this case happened to be located in Idaho. A courier received the Mixed Box in Idaho, transferred it to one of its facilities in Utah, and then finally delivered it to Yoon's California residence.

52.    On information and belief, neither PGA TOUR Superstore nor any other party altered the Mixed Box that Yoon received after it left Defendant's

custody or control. PGA TOUR Superstore, its Idaho retail store, and Yoon all reasonably relied on Defendant's representations concerning the contents of the Mixed Box delivered to Yoon.

53.     *Plaintiff Georgulis*. In December 2024, Georgulis wanted to buy two boxes of twelve Left Dash EA golf balls, so he ordered and paid for them online from Golf Galaxy. However, when he received his order, he received two Mixed Boxes, each containing only nine Left Dash EA balls. He paid for twenty-four and received eighteen. He ordered and received the balls while at his residence in Harris County, Texas.

54.     Golf Galaxy fulfilled Georgulis' order by shipping Georgulis two Mixed Boxes from one of its retail stores, which in this case happened to be located in Ohio. A courier received the Mixed Boxes in Ohio, transferred them to one of its facilities in Kentucky, and then finally delivered the Mixed Boxes to Georgulis' Texas residence.

55.     On information and belief, neither Golf Galaxy nor any other party altered the Mixed Boxes that Georgulis received after they left Defendant's custody or control. Golf Galaxy, its Ohio retail store, and Georgulis all reasonably relied on Defendant's representations concerning the contents of the Mixed Boxes delivered to Georgulis.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs seek to represent the following nationwide class defined as follows:

> **Nationwide Class**: Plaintiffs seek to represent a class
> consisting of all persons in the United States who purchased a
> box purportedly containing one dozen Titleist –Pro V1x Left
> Dash golf balls with Enhanced Alignment and received a box
> containing fewer than one dozen Titleist -Pro V1x Left Dash golf
> balls with Enhanced Alignment (the "Nationwide Class").

57.    Plaintiffs also seek to represent any subclasses or issue classes of the
Nationwide Class and/or any alternative classes in the absence of a Nationwide
Class that Plaintiffs may propose and/or this Court may designate at the time of
class certification with respect to the claims set forth below, including without
limitation claims under the consumer protection, unfair and deceptive trade
practices statutes, and/or warranty statutes of any jurisdiction that is or would
have been a part the proposed Nationwide Class and in which any one or more
Plaintiffs would be a member, including without limitation Missouri, Illinois,
Virginia, California, and Texas. (Collectively, the Nationwide Class and any issue
class or subclass or alternative classes in the absence of a Nationwide Class are
hereinafter referred to as the "Classes").

58.    *Numerosity*. The precise number of Class Members is currently
unknown as Defendant does not disclose sales for each golf ball model. Nonetheless
because Defendant sold approximately $750 million worth of golf balls in 2024 and
Mixed Boxes have been received by consumers all over the United States, the Class
Members are expected to number in the thousands.

59.    *Commonality*. Common issues of fact and law predominate over any
individualized claims. The Class Members have suffered the same injury in the
same manner. They intended and attempted to purchase twelve Left Dash EA golf

balls but only received nine. Defendant's conduct was not individualized towards any Class Member. Its conduct was the same to all Class Members. Accordingly, each of Plaintiffs' claims, and those of absent Class Members, are subject or susceptible to generalized, classwide proof, and, therefore, the outcome of Plaintiffs' individual claims will be dispositive for the Class Members. Common questions include the following.

a.    Did Defendant falsely market, advertise, distribute, or sell the Mixed Boxes?

b.    Did Defendant falsely market, advertise, distribute, or sell the Mixed Boxes knowingly?

c.    Did Defendant represent that the Mixed Boxes would contain twelve Left Dash EA golf balls?

d.    Did Defendant intend its representations on its golf ball boxes to induce Plaintiffs and the Class Members into purchasing the golf ball boxes?

e.    Did Plaintiffs and the Class Members reasonably rely on Defendant's representations concerning the contents of the Mixed Boxes?

f.    Did Plaintiffs and the Class Members receive Mixed Boxes?

g.    Was a Mixed Box, containing only nine desired Left Dash EA golf balls and three unwanted Pro V1x EA golf balls, worth less to the Plaintiffs and the Class Members than a box containing twelve Left Dash EA golf balls?

      h.     What is the measure of damages for Plaintiffs and the Class Members who bought a box of golf balls expecting 12 Left Dash EA balls but received a Mixed Box containing only nine?

      i.     Did Defendant's false marketing, advertising, distribution, or sale of Mixed Boxes, while representing that they would contain twelve Left Dash EA golf balls, constitute an unfair and/or deceptive act or practice?

      j.     Did Defendant conceal that it was selling or distributing Mixed Boxes after it became aware of their existence?

60.     In other words, Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, each on his own behalf and on behalf of the putative Classes. Individual questions of fact, if any, pale by comparison, in both quantity and quality, to the numerous common questions of fact that predominate this action.

61.     *Typicality*. Plaintiffs' claims are typical of all Class Members. All Class Members were under the same assumptions about the content of the golf ball boxes purchased and were surprised to discover that the Mixed Boxes received contained something other than Left Dash EA golf balls. Plaintiffs had no different knowledge about the sale of Mixed Boxes. All were similarly affected by Defendant's wrongful conduct.

62.     *Adequacy of Representation*. Plaintiffs have led in developing and prosecuting this case. They understand the case and will vigorously fulfill their

duties as class representatives. Plaintiffs have, on their own behalf and on behalf of the Class Members, issued pre-suit notices and demands to Defendant.

63.     Plaintiffs have retained the undersigned attorneys who are competent, capable of committing adequate resources to representing the Classes, knowledgeable of applicable law, and experienced in class actions, consumer litigation, and other complex litigation. Moreover, they have worked very well together in past class actions concerning consumer litigation, and they do not foresee any difficulties working together for the benefit of the Classes. See *McAllister, et al. v. St. Louis Rams, LLC,* Case #: 4:16-cv-00172-SNLJ (consolidated with 4:16-cv-189, 4:16-cv-262; and 4:16-cv-297), doc #355 (E.D. Mo. March 13, 2018) (undersigned attorneys David R. Bohm and Fernando Bermudez were appointed as class counsel for the "Rams Class" and the "MMPA Subclass"); *Mackey v. Belden, Inc.*, 4:21-CV-00149-JAR, 2021 WL 3363174, at *2 (E.D. Mo. Aug. 3, 2021) (undersigned attorney Katherine M. Flett as one of the attorneys for the class and its representative).  Accordingly, Plaintiffs' attorneys will vigorously prosecute this action and fairly and adequately represent the Classes.

64.     *Superiority*. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages suffered individually by the Class Members are relatively small compared to the burden and expense required to litigate their claims individually. This economic reality means that only a class action can redress Defendant's conduct.

This class action presents few management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### MASSACHUSETTS UNFAIR AND/OR DEPCEPTIVE ACTS OR PRACTICES
*(Plaintiffs individually and on behalf of the Classes)*

65.     Plaintiffs re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

66.     Mass. Gen. Laws Ann. ch. 93A, § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

67.      940 Mass. Code Regs. 3.05 provides in relevant part:

"(1)    No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect…"

"(2)    No advertisement shall be used which would mislead or tend to mislead buyers or prospective buyers, through pictorial representations or in any other manner, as to the product being offered for sale…"

68.     Similarly, 940 Mass. Code Regs. 3.16 provides in relevant part:

"Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c.93A, § 2 if…"

"(2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or…"

69.     Additionally, 940 Mass. Code Regs. 3.15 provides in relevant part:

"(2) <u>Substitution of Products</u>. It is an unfair and deceptive trade practice to make a substitution of products:

"(a) By shipping, delivering, or installing products which do not conform to samples submitted or to specifications upon which the sale is consummated to induced, or to the representations made prior to securing the order, without advising the purchaser of the substitution and obtaining his consent thereto prior to making shipment, delivery, or installation…"

"(c) When there was no intention to deliver the original merchandise ordered."

70.      Plaintiffs purchased their golf balls for personal use.

71.      Defendant falsely marketed, advertised, sold, and/or distributed its Mixed Boxes to consumers nationwide, including Plaintiffs and the Class Members.

72.      Defendant represented a box of golf balls for sale as containing twelve Left Dash EA golf balls but delivered a Mixed Box containing only nine such golf balls. This constitutes an unfair and/or deceptive act or practice because it has the tendency to induce a reasonable consumer to buy a Mixed Box containing only nine Left Dash EA golf balls rather than the twelve that he or she bargained for.

73.      Consequently, Defendant's sale of Mixed Boxes economically injured Plaintiffs and the Class Members as they received fewer Left Dash EA golf balls than were promised.

74.      As required by Mass. Gen. Laws Ann. ch. 93A, § 9(3), on March 20, 2025, Plaintiffs, by their counsel, sent a letter to Defendant titled "Pre-Litigation Demand for Relief Under the Massachusetts Consumer Protection Laws (Mass. Gen. Laws. Ch. 93A § 9)."

75.    Defendant did not respond or tender any relief in settlement of the asserted claims and demand within 30 days of Plaintiffs' letter.

76.    Defendant's sale of Mixed Boxes was or has been intentional, knowing, and/or with reckless indifference to the rights of Plaintiffs and the Class Members.

77.    Accordingly, Plaintiffs seek a class action judgment awarding remedies for the economic injuries caused by Defendant's breach of Mass. Gen. Laws. Ch. 93A § 2, including compensatory, exemplary, treble, punitive, and/or statutory damages; interest; reasonable attorneys' fees; costs; and expenses.

## COUNT II
### FRAUDULENT MISREPRESENTATION OR DECEIT
*(Plaintiffs individually and on behalf of the Classes)*

78.    Plaintiffs re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

79.    Defendant falsely represented that a box of golf balls would include "ONE DOZEN –PRO V1x GOLF BALLS" when, in fact, it contained only nine Left Dash EA golf balls and three Pro V1x EA golf balls.

80.    Defendant made the representations with knowledge of their falsity because Defendant had actual knowledge of the representations' falsity or, alternatively, Defendant made and continued to make the false representations after Defendant learned or should have learned of their falsity. As stated above, this knowledge would have or should have been unavoidable during Defendant's regular—and highly controlled—manufacturing, packaging, and distribution processes by an excess of Left Dash EA golf balls numbered 4 in inventory—if ever manufactured—or the deficit of Pro V1x EA golf balls numbered 4 in inventory—if

ever expected— and/or upon receiving or learning of consumer or retailer complaints.

81.     Defendant made the false representation to induce Plaintiffs and the Class Members to purchase the Mixed Box containing only nine Left Dash EA golf balls.

82.     Plaintiffs and the Class Members reasonably and justifiably relied on the false representations.

83.     Plaintiffs and the Class Members suffered economic injuries from the false representations and request all relief available, including compensatory, exemplary, treble, punitive, and/or statutory damages; interest; reasonable attorneys' fees; costs; and expenses.

## COUNT III
## FRAUD BY OMISSION
### *(Plaintiffs individually and on behalf of the Classes)*

84.     Plaintiffs re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

85.     Defendant knowingly concealed material information concerning the sale of its Left Dash EA golf balls. It concealed that each Mixed Box contained nine Left Dash EA balls rather than twelve as represented.

86.     Defendant had a duty to disclose the concealed fact because the nondisclosed fact was a fundamental term of the economic transaction. When a consumer purchased a box of twelve Left Dash EA balls, they were entitled to know if they were receiving fewer than the twelve Left Dash EA balls as represented.

Plaintiffs and the Class Members would not have bought a box purportedly containing twelve Left Dash EA balls if they knew there were only nine in the box.

87.     Defendant knowingly concealed the information to induce Plaintiffs and the Class Members to purchase the Mixed Boxes or alternatively, continued to conceal the information after learning that Mixed Boxes contained only nine Left Dash EA balls.

88.     Plaintiffs and the Class Members reasonably and justifiably relied on Defendant's representations and concealment to their detriment.

89.     Plaintiffs and the Class Members suffered economic injuries from the concealment and request all relief available, including compensatory, exemplary, treble, punitive, and/or statutory damages; interest; reasonable attorneys' fees; costs; and expenses.

## COUNT IV
### NEGLIGENT MISREPRESENTATION
#### (Plaintiffs individually and on behalf of the Classes)

90.     Plaintiffs re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

91.     Defendant made the above-described misrepresentations and sold the Mixed Boxes in the course of its business or in transactions in which it had a financial interest.

92.     Defendant supplied the false information to induce Plaintiffs to purchase a box of Defendant's golf balls.

93.     Defendant failed to use reasonable care or competence in communicating the false information concerning the contents of the Mixed Boxes.

94.    Plaintiffs and the Class Members reasonably and justifiably relied on the false information.

95.    Plaintiffs and the Class Members suffered economic injuries from the negligent misrepresentations and request all relief available, including compensatory, exemplary, treble, punitive, and/or statutory damages; interest; reasonable attorneys' fees; costs; and expenses.

*COUNT V*
*BREACH OF EXPRESS WARRANTY*
*(Plaintiffs individually and on behalf of the Classes)*

96.    Plaintiffs re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

97.    Mass. Gen. Laws Ann. ch. 106, § 2-313 provides:

"(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

98.    As stated above, the packaging of each of Defendant's boxes purportedly containing one dozen Left Dash EA golf balls (including the Mixed

Boxes) expressly states, "ONE DOZEN –PRO V1x GOLF BALLS;" however, the Mixed Boxes that Plaintiffs and the Class Members received, contained only nine of the desired Left Dash EA golf balls and three unwanted 2023 Pro V1x golf balls with different performance characteristics.

99.     Accordingly, Defendant had promised a specific result, representing that the purchased box would contain one dozen Left Dash EA golf balls, and Defendant failed to deliver on that warranty and promise, delivering only nine Left Dash EA golf balls and three unwanted golf balls with different performance characteristics.

100.    Plaintiffs and the Class Members reasonably relied on Defendant's express warranty concerning the contents of the boxes purchased.

101.    Plaintiffs and the Class Members suffered economic injuries from Defendant's breach of an express warranty and request all relief available, including compensatory, exemplary, treble, punitive, and/or statutory damages; interest; reasonable attorneys' fees; costs; and expenses.

102.    Additionally, Plaintiffs' counsel, on behalf of Plaintiffs and the putative Class Members, gave Defendant notice of Defendant's sale of Mixed Boxes and breach of warranty by its letter dated March 20, 2025. However, because Defendant had or previously acquired actual knowledge of its own design, manufacture, marketing, advertising, distribution, and/or sale of Mixed Boxes, Defendant would have suffered no prejudice from any perceived delay or failure of Plaintiffs or any Class Member to give Defendant further notice of its breach of warranty.

## COUNT VI
### BREACH OF IMPLIED WARRANTY; MERCHANTABILITY
*(Plaintiffs individually and on behalf of the Classes)*

103.    Plaintiffs re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

104.    Defendant is a merchant with respect to golf balls and boxes of golf balls, including the Mixed Boxes at issue here.

105.    An implied warranty of merchantability requires, among other things, that the boxes of golf balls designed, manufactured, marketed, advertised, packaged, distributed, and/or sold by Defendant would "conform to the promises or affirmations of fact made on the container or label if any;" and "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved." Mass. Gen. Laws Ann. ch. 106, § 2-315.

106.    Plaintiffs and the Class Members reasonably relied on an implied warranty that the contents of the boxes purchased would conform to the promises or affirmations of fact made on the box itself.

107.    Plaintiffs and the Class Members suffered economic injuries from Defendant's breach of an implied warranty of merchantability and request all relief available, including compensatory, exemplary, treble, punitive, and/or statutory damages; interest; reasonable attorneys' fees; costs; and expenses.

## COUNT VII
### BREACH OF IMPLIED WARRANTY; FITNESS FOR A PARTICULAR PURPOSE
*(Plaintiffs individually and on behalf of the Classes)*

108.    Plaintiffs re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

109.    Mass. Gen. Laws Ann. ch. 106, § 2-315 provides in relevant part:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

110.    As stated above, each model of Defendant's golf balls is highly differentiated and not interchangeable. Defendant's Pro V1x is specifically designed and marketed as a higher spinning, premium golf ball, and its Left Dash is specifically designed and marketed as a lower spinning, premium golf ball. These performance characteristics are directly compared and represented on the packaging of Defendant's Left Dash golf balls. See Image C above.

111.    Consequently, a golfer who buys the lower spinning Left Dash would not have intended to buy the higher spinning Pro V1x because the Pro V1x would reliably generate too much spin for that player, costing distance and accuracy.

112.    Defendant has reason to know that a buyer looking to purchase the Left Dash is doing so for a particular purpose; namely, the use of a lower spinning, premium golf ball.

113.    Likewise, Defendant has reason to know that the buyer is relying on Defendant's self-professed expertise in furnishing a suitable golf ball; namely, the Left Dash that Defendant specifically designed and markets for this particular purpose.

114.    Defendant representing a box of golf balls for sale as containing twelve Left Dash golf balls but delivering a Mixed Box instead, which contained only nine

of the lower spinning Left Dash golf balls and three of the higher spinning 2023 Pro V1x golf balls, constitutes a breach of the implied warranty that the golf balls purchased will be fit for the buyer's particular purpose.

115.   Plaintiffs and the Class Members reasonably relied on the implied warranty of fitness for a particular purpose; namely, that the box would contain the lower spinning, premium golf balls designed, manufactured, marketed, advertised, packaged, distributed, and/or sold by Defendant.

116.   Plaintiffs and the Class Members suffered economic injuries from Defendant's breach of an implied warranty of fitness for a particular purpose and request all relief available including compensatory, exemplary, treble, punitive, and/or statutory damages; interest; reasonable attorneys' fees; costs; and expenses.

## COUNT VIII
## UNJUST ENRICHMENT
*(Plaintiffs individually and on behalf of the Classes)*

117.   Plaintiffs re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

118.   Plaintiffs and the Class Members conferred a measurable, monetary benefit to Defendant by purchasing a box of Defendant's golf balls, directly or indirectly, while reasonably relying on Defendant's representations concerning the box containing only Left Dash EA golf balls.

119.   Defendant was aware and had actual or chargeable knowledge of the expectations and reliance of Plaintiffs and the Class Members, and Defendant has realized of the benefits received from the sales of the Mixed Boxes, including direct profits and other material benefits such as stretching Defendant's inventory of

boxes purportedly containing twelve Left Dash golf balls, i.e. selling more such boxes than Defendant otherwise could have if they had been filled with only Left Dash golf balls, while contemporaneously reducing its inventory of unwanted and soon-to-be outdated the 2023 Pro V1x golf balls, which golf balls still sit discounted on retailer shelves.

120.    Plaintiffs, individually and on behalf of the Class Members, have demanded that Defendant make restitution or deliver the benefit of their bargain, and Defendant has refused.

121.    Because Plaintiffs and the Class Members received a Mixed Box instead, Defendant's acceptance or retention of the benefits received without compensating Plaintiffs and the Class Members is unjust under the circumstances.

122.    The reasonable value of the benefit provided to Defendant exceeds or approximates $13.75 per Mixed Box sold, or $4.58 per unwanted golf ball received, exclusive of sales taxes paid by Plaintiffs and the Class Members.

123.    For the reasons stated above, it is against equity and good conscience to permit Defendant to retain the above-described benefits that Plaintiffs and the Class Members provided to Defendant without compensating them.

### COUNT IX
### MISSOURI MERCHANDISING PRACTICES ACT
*(Long and Meletti, individually and on behalf of a Missouri Subclass)*

124.    The plaintiffs Long and Meletti re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

125.    RSMo § 407.020 provides in relevant part:

"The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice."

126.    The plaintiffs Long and Meletti and each member of a Missouri subclass suffered economic injuries as a result of Defendant's violation of RSMo § 407.020.

127.    Individually and on behalf of a Missouri subclass, the plaintiffs Long and Meletti request all relief available, including compensatory, exemplary, treble, punitive, and/or statutory damages; interest; reasonable attorneys' fees; costs; and expenses.

## COUNT X
### MISSOURI BREACH OF EXPRESS WARRANTY
*(Long and Meletti, individually and on behalf of a Missouri Subclass)*

128.    The plaintiffs Long and Meletti re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

129.    RSMo § 400.2-313 provides in relevant part as follows:

"(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

130. The plaintiffs Long and Meletti and the members of a Missouri subclass suffered economic injuries as a result of Defendant's breach of an express warranty.

131. Individually and on behalf of a Missouri subclass, the plaintiffs Long and Meletti request all relief available, including compensatory, exemplary, treble, punitive, and/or statutory damages; interest; reasonable attorneys' fees; costs; and expenses.

## COUNT XI
### MISSOURI BREACH OF IMPLIED WARRANTY; MERCHANTABILITY
### (Long and Meletti, individually and on behalf of a Missouri Subclass)

132. The plaintiffs Long and Meletti re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

133. An implied warranty of merchantability requires, among other things, that the boxes of golf balls designed, manufactured, marketed, advertised, packaged, distributed, and/or sold by Defendant would "conform to the promises or affirmations of fact made on the container or label if any;" and "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved." RSMo § 400.2-314.

134.    The plaintiffs Long and Meletti and the members of a Missouri subclass suffered economic injuries as a result of Defendant's breach of an implied warranty of merchantability.

135.    Individually and on behalf of a Missouri subclass, the plaintiffs Long and Meletti request all relief available, including compensatory, exemplary, treble, punitive, and/or statutory damages; interest; reasonable attorneys' fees; costs; and expenses.

*COUNT XII*
*MISSOURI BREACH OF IMPLIED WARRANTY; FITNESS FOR A PARTICULAR PURPOSE*
*(Long and Meletti, individually and on behalf of a Missouri Subclass)*

136.    The plaintiffs Long and Meletti re-allege and incorporate all foregoing paragraphs as if fully set forth herein.

137.    RSMo § 400.2-315 provides:

> "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods there is unless excluded or modified under section 400.2-316 an implied warranty that the goods shall be fit for such purpose."

138.    The plaintiffs Long and Meletti and the members of a Missouri subclass suffered economic injuries as a result of Defendant's breach of an implied warranty of fitness for a particular purpose.

139.    Individually and on behalf of a Missouri subclass, the plaintiffs Long and Meletti request all relief available, including compensatory damages; interest; reasonable attorneys' fees; costs; and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, each on his own behalf and on behalf of the Class Members, respectfully requests the Court order relief and enter judgment in their favor and against Defendant as follows:

A.      An order certifying this action as a class action pursuant to the Federal Rules of Civil Procedure 23 and/or Mass. Gen. Laws. Ch. 93A § 9(2), defining the Classes as requested herein, appointing the undersigned as the Classes' counsel, and finding Plaintiffs proper representatives of the Classes requested herein;

B.      A judgment awarding Plaintiffs and the Class Members appropriate monetary relief in excess of $5,000,000.00 for damages, including compensatory, statutory, treble, exemplary, and/or punitive damages suffered by the Class Members, incentive awards for the Classes' representatives, and any and all other damages according to proof;

C.      An order that Defendant pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

D.      An award of reasonable attorneys' fees, expenses, and costs of this action;

E.      An award of pre- and post-judgment interest on any amounts awarded; and

F.      An award of any and all other and further forms of relief as this Court deems just and proper.

### *DEMAND FOR JURY TRIAL*

Plaintiffs, individually and on behalf of the proposed Classes, hereby demand a trial by jury as to all matters.

Date:                                        Respectfully submitted,

DANNA MCKITRICK, P.C.

By:        */s/ Bryan J. Schrempf*
Bryan J. Schrempf, #66211
David R. Bohm, #35166
Katherine M. Flett, #68183
DANNA MCKITRICK, P.C.
7701 Forsyth Blvd., Suite 1200
St. Louis, MO  63105-3907
(314) 726-1000 / (314) 725-6592 fax
bschrempf@dmfirm.com
dbohm@dmfirm.com
kflett@dmfirm.com

Fernando Bermudez, #39943
BERMUDEZ LAW FIRM
222 S. Central Blvd., Suite 550
St. Louis, MO 63108
(314) 339-3082
fbermudez@bermudezlawstl.com

***Attorneys for Plaintiffs and the
Putative Classes***